J-S03018-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                        :         PENNSYLVANIA
                                          :
              v.                     :
                                          :
                                          :
JOHN GRAZIOLI                    :
                                          :
                Appellant         :      No. 685 WDA 2019

Appeal from the Judgment of Sentence Entered April 5, 2019
In the Court of Common Pleas of Erie County Criminal Division
at No(s): CP-25-CR-0001341-2018

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:          **FILED MARCH 10, 2020**

John Grazioli (Appellant) appeals from the judgment of sentence entered in the Erie County Court of Common Pleas, following his jury-trial convictions of first degree murder[1] and related offenses. Appellant argues the trial court erred in refusing to provide a voluntary intoxication jury instruction. We affirm.

Appellant shot his wife, Amanda Grazioli (Wife), in the back of the head as she slept. On appeal, Appellant claims he was intoxicated when he placed a loaded handgun to the head of his wife and fired the weapon ending her life. The trial court summarized the evidence presented by the Commonwealth at trial as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2702(a)(1).

Exactly one month before the murder, Appellant purchased a firearm from a local sports store. [N.T. Trial, 2/5/19, at 153-55]. At trial, he claimed that the gun was intended as a birthday present for [Wife] due to their concern over violent crime in Erie. [N.T. Trial, 2/6/19 afternoon, at 16-17]. He also claimed that when he took the gun out of the closet at the time of the murder, his purpose in doing so was to give her [the] birthday present. [*Id.* at 31, 33.]

[Wife's] birthday, however, was still a month away. [N.T. Trial, 2/6/19 morning, at 33-35.[2]]

Trial Ct. Op., 8/8/19 at 6. Furthermore, Appellant left the gun's instruction manual, the original plastic case, the "valuable" holster, and a box of ammunition at his office. Also, some ammunition remained missing. *Id.*

About ten days before the murder, . . . Appellant told his ex-wife [Erica Grazioli, (Ex-Wife)] that he was "getting [Wife] out of our lives" and begged her to "please, please keep this secret until I serve her . . . . " [N.T., 2/5/19, at 130]. His ex-wife assumed he was merely talking about serving divorce papers. No divorce papers, however, turned up during police investigations of the case. [N.T., 2/6/19 morning, at 41]. Appellant presented no evidence or witness to show that he had gone to an attorney to have such papers prepared.

*Id.* at 5.

Finally, the day before the murder, March 7, 2018, Appellant e-mailed his ex-wife and said "I hope to have everything resolved by Friday [March 9, 2018]." . . . Instead, by the end of the next day, [Wife] was dead.

*Id.* at 6.

Appellant made sure his children would not be present at the scene, arranging to have them stay with his ex-wife during the

---

[2] The cover page of this transcript identifies the proceedings as "Jury Trial - Day 3 (Morning Session)" and held on "Monday, February 6, 2019." However, we note the correct date of the proceedings was **Wednesday**, February 6, 2019.

period of time when the crime would be committed. [N.T., 2/5/19, at 131-32].

*Id.* at 5.

On March 8, 2018, at 2:16 p.m., Appellant called Ex-Wife "and clearly expressed that he had killed" Wife. Trial Ct. Op. at 8. Appellant also told Ex-Wife he "had the gun with him and that he was going to kill himself." N.T., 2/5/19, at 139. Ex-Wife asked her co-worker to call the police, and the Millcreek Township Police responded to Appellant's home. *Id.* at 25-26, 141. Responding police officers discovered Wife's body in her bed, covered with a blanket. *Id.* at 33. Wife sustained a gunshot to the back of her head. *Id.* at 52.

The trial court recounted:

- Not long after his conversation with [Ex-Wife], Appellant surrendered to and was arrested by the police.

- At 4:00 PM, after his arrest, Appellant was brought into the Millcreek Police station. An officer with a significant history of dealing with drug-impaired individuals testified Appellant showed no signs of intoxication when he was brought to the station. Appellant showed: (1) no slurred speech, (2) no impaired movement, (3) no illness, and (4) no smell of alcohol. [N.T., 2/5/19 at 99-103]. And during his interview with the police directly following, during which he showed no signs of intoxication, Appellant never claimed that killing [Wife] was an accident.

Trial Ct. Op. at 8-9.

With respect to Appellant's claim he was intoxicated at the time of the shooting, the trial court highlighted Appellant's relevant actions after the

shooting:

- By 6:45 AM, Appellant was sending text messages to his children. The texts included clearly expressed sentiments such as "Good morning! I love you both with all my heart." [N.T., 2/6/19 morning, at 71].

- The police found [Wife's] pink cell phone inside Appellant's car after they arrested him. [*Id.* at 13]. Review of the phone's contents revealed that by 9:00 AM Appellant had begun using that phone to text [Wife]'s co-workers and friends to make it appear that she was still alive, specifically by sending messages saying that she was ill and would miss work, *etc*. [N.T., 2/5/19, at 85-96].

\*   \*   \*

- Appellant was sober enough to leave a note in the room where [Wife]'s body was later discovered, saying:

  "I killed [Wife]. Next of kin Denise Katz . . . My attorney is John Evanoff. He has my will. Phone number 814-490-3156. My ex-wife will need access to the house to get our children's things. Everything goes to them. She has keys. Erica Grazioli, 814-881-2141. The dogs are harmless. They are in the basement, Ari and Chloe. If my kids want them, they can take the dogs. Sorry for all of this. John Grazioli. The password for my phone (black) is 039280." [*Id.* at 39].

Trial Ct. Op. at 7-8.

Additionally, Appellant placed a box on Ex-Wife's porch, which contained a recently-made will and notes to Ex-Wife and their children, "all clearly and concisely written." Trial Ct. Op. at 4, 8. In the letters to his children, Appellant "expresse[d] frustration for how badly [Wife] treated" them. *Id.* at 4.

Appellant even planned for his two dogs to be taken care of. After locking them in cages in his basement, he left a note for the police stating that "The dogs are harmless. They are in the basement . . . If my kids want them, they can take the dogs." [N.T., 2/5/19, at 39].

*Id.* at 5.

The case proceeded to a jury trial on February 4, 2019. Ex-Wife testified that during her telephone conversation following the shooting, "at no point [had Appellant] claimed that the killing was a result of any form of drug impairment or intoxication. She did not testify that he claimed it was an accident." Trial Ct. Op. at 8, *citing* N.T., 2/5/19, at 142.

Appellant testified on his own behalf to the following. On the evening of March 7, 2018, he and Wife both consumed alcohol, cocaine, and marijuana. N.T., 2/6/19 afternoon, at 23, 25-28. Appellant additionally took one Ativan. *Id.* at 29. Later, he and Wife were in bed, and Wife was facing away from him because the dog was lying against her. *Id.* at 33. Appellant told Wife, "Here's your present." *Id.* Wife could not roll over because of the dog, but she turned her head and said, "Thanks, Babe." *Id.* Appellant showed Wife the gun, and pulled the "slide" on it to show her how to load the weapon. *Id.* At trial, Appellant stated he did not know if the gun had a safety mechanism, but he believed there was a "push button" to unload the weapon. Appellant testified that as he attempted to unload the gun, he pressed "a button on the side" with his thumb and squeezed the trigger causing the weapon to discharge into the back of Wife's head. *Id.* at

34. After shooting Wife, Appellant pulled the covers over her head. *Id.* at 74. Later that morning, he wrote letters to his children. *Id.* at 36. Instead of calling authorities, Appellant went to eat lunch and attend mass, where he had the opportunity to see his children. *Id.* at 37. Appellant did not call any other witnesses and did not present expert testimony. Significantly, he did not present any evidence that would corroborate his claim of intoxication.

Finally, we note firearms expert witness, Pennsylvania State Police Corporal Dale Wimer, testified that Appellant's "firearm discharged at approximately 10 pounds of trigger-pull weight," and it was highly unlikely "that the firearm could discharge accidently." N.T. Trial, 2/6/19 morning, at 54.

Appellant requested the trial court provide a voluntary intoxication jury instruction.[3] The Commonwealth objected and the court denied Appellant's request. N.T. Trial, 2/7/19, at 5.[4] The jury found Appellant guilty of murder of the first degree, possession of an instrument of crime, aggravated assault, recklessly endangering another person, and carrying a firearm without a license.[5] On April 5, 2019, the court sentenced Appellant to an

---

[3] **See** Pa. SSJI (Crim) 8.308(B) (jury may be instructed voluntary intoxication is defense to crime of murder in first degree).

[4] The cover page of this transcript identifies the proceedings as "Jury Trial Day 4 of 4" and held on "Thursday, February 6, 2019." However, we note the correct date of the proceedings was Thursday, February **7**, 2019.

[5] 18 Pa.C.S. §§ 907(a), 2702(a)(1), 2705, 6106(a)(2).

aggregate term of life imprisonment without parole. Appellant did not file a post-trial motion.

On May 3, 2019, Appellant timely filed a notice of appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellant presents one issue for our review:

Whether the trial court committed an error of law and/or abuse of discretion when it denied [Appellant's] request to adopt the proposed point of charge of Voluntary Intoxication or Drugged Condition as a Defense to First Degree Murder, despite evidence presented through trial by both parties supporting the provision of this charge.

Appellant's Brief at 4. Appellant contends the trial court erred when it denied his request to adopt the proposed jury instruction of voluntary intoxication or drugged condition as a defense to first-degree murder.[6] Appellant cites his trial testimony that in the hours prior to Wife's death, they both consumed alcohol and used cocaine and marijuana, while he also used the prescription drug, Ativan. Appellant argues the Commonwealth's expert witness established that Wife's toxicology screen revealed the presence of marijuana, Zoloft, cocaine and alcohol. *Id.* at 9-10, *citing* N.T., 2/5/19, at 56, 60-62, 77. Further, the expert explained how a combination of these drugs could affect an individual's neurobiological impulses and

---

[6] For a defendant who proves a diminished capacity defense, first-degree murder is mitigated to third-degree murder. ***Commonwealth v. Saranchak***, 866 A.2d 292, 299 (Pa. 2005).

cognitive abilities. Appellant notes he was willing to submit to a blood test, to prove his intoxication, but officers did not conduct one. Appellant believes the blood test "may" have provided exculpatory evidence. *Id.* at 11. Thus, Appellant argues, he presented sufficient evidence of his impairment to warrant a voluntary intoxication jury instruction. We disagree and find no relief is due.

The standard of review for a trial court's decision to refuse a diminished capacity jury instruction based on voluntary intoxication is an abuse of discretion. **Commonwealth v. Clemons**, 200 A.3d 441, 465 (Pa. 2019), *cert. denied*, 140 S.Ct. 176 (2019).

As our Supreme Court has explained:

In examining jury instructions, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case. A charge will be found adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error.

**Commonwealth v. Chambers**, 980 A.2d 35, 49-50 (Pa. 2009) (quotation marks and citations omitted).

In regards to the abuse of discretion standard, we note:

When a court comes to a conclusion through the exercise of its discretion, there is a heavy burden to show that this discretion has been abused. It is not sufficient to persuade the appellate court that it might have reached a different conclusion, it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of

partiality, prejudice, bias or ill-will. Absent an abuse of that discretion, we will not disturb the ruling of the trial court.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1140 (Pa. 2007) (citations omitted).

"A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S. § 2502(a). Our Supreme Court has stated:

> "A defense of diminished capacity negates the element of specific intent, and thus mitigates first-degree murder to third-degree murder." *Commonwealth v. Padilla*, . . . 80 A.3d 1238, 1263 ([Pa.] 2013) . . . . The fact that the record contains some evidence that the defendant consumed an intoxicant will not suffice to justify a diminished capacity instruction. [*Id.*]. A defendant is entitled to the instruction only when he "was overwhelmed to the point of losing his faculties and sensibilities."

*Clemons*, 200 A.3d at 465 (some citations omitted).

In *Padilla*, the defendant argued his convictions of first-degree murder should be vacated because the trial court erred when it instructed the jury there was no evidence of diminished capacity due to his ingestion of alcohol and/or drugs. *Padilla*, 80 A.3d at 1263. The Supreme Court of Pennsylvania, affirmed, reasoning the defendant's own psychologist expert witness testified the defendant's ability to form intent to kill was "likely impacted," but he "had **not** lost control over his behavior." *Id.* at 1266. The Court further noted that while the trial court instructed the jury "there was no evidence to support a diminished capacity defense based **solely** on drug and alcohol consumption," the "court's instructions explicitly allowed

the jury to consider the testimony regarding voluntary intoxication." *Id.* at 1268.

In *Clemons*, the defendant challenged the denial of a voluntary intoxication jury instruction after being convicted of first-degree murder. *Clemons*, 200 A.3d at 465. The defendant claimed that evidence of beer cans and drugs at the crime scene, and the fact that he was intoxicated when he turned himself into authorities 24 hours after the murder, was sufficient for the instruction. *Id.* at 466. Relying on *Padilla*, the defendant further argued that a defendant asserting voluntary intoxication is entitled to a *Padilla*-like jury instruction in every circumstance. *Clemons*, 200 A.3d at 467. Our Supreme Court noted the instruction provided by the court in *Padilla* conformed to the expert testimony and circumstances presented at that particular trial, and did not constitute reversible error on that record. *Id.* The Court clarified that its ruling in *Padilla* did not create a new general rule applicable to any defendant who seeks to argue voluntary intoxication. *Id.* The Court then concluded the defendant did not demonstrate the evidence of record compelled the instruction, particularly because there was no evidence he was sufficiently intoxicated at the time of the murder. *Id.* at 465. The Court importantly noted that even if the defendant had consumed beer, nothing in the record showed he was so intoxicated that he lost control of his faculties. *Id.* at 466.

A diminished capacity defense based on voluntary intoxication cannot be asserted by mere evidence of intoxication, but rather requires evidence that demonstrates the defendant was intoxicated to such an extent he was unable to form the requisite intent. ***Commonwealth v. Spotz***, 896 A.2d 1191, 1218 (Pa. 2006). Moreover, "[a] defense of diminished capacity is only available to a defendant who admits criminal liability but contests the degree of guilt." ***Commonwealth v. Laird***, 726 A.2d 346, 353 (Pa. 1999).

In the instant matter, the trial court opined:

> At trial, Appellant presented no evidence that he had been intoxicated to the point of losing his faculties and sensibilities at the time of the murder, as per ***Clemons***. In fact, Appellant offered no proof that he had even been intoxicated. The vast majority of evidence presented at trial clearly showed that Appellant committed the killing as a result of a preconceived plan, as opposed to a temporary, drug-induced haze. There was insufficient evidence to require this Court to give the jury Appellant's desired jury instruction. . . .

> During trial, Appellant brought forward no expert witnesses to testify regarding the mental effects of taking the drugs he claimed to have been using on the night in question. He further presented no expert testimony regarding what amount of such drug use would lead to the kind of impairment he claims to have been under, or whether the effects of that level of drug use would have been obvious to people interacting with him in the hours that followed. The fact that the record contains some evidence that Appellant consumed intoxicants will not suffice to justify a diminished capacity instruction. [***Clemons***, 200 A.3d at 465]. While a number of circumstances make clear that drugs were present in [Appellant's] home on the night of the murder, no proof was presented to the Trial Court that Appellant used those drugs himself on that night. The only proof of drug use was in regards to [Wife], who had drugs in her system at the time of her death. [N.T., 2/5/19, at 56]. Even assuming, *arguendo*, that Appellant was using drugs shortly before the murder, and that the amounts in his system were similar to

those found in the system of [Wife], expert testimony by a Commonwealth witness established that the level of intoxicants/drugs in [Wife's] system was merely "therapeutic." [*Id.* at 56-63.]

Trial Ct. Op. at 3. The court further reasoned:

As per [**Clemons**], Appellant has failed to meet the standard that "a voluntary intoxication instruction is justified only when there is evidence that the defendant was 'overwhelmed or overpowered by alcoholic liquor [or drugs] to the point of losing his . . . faculties or sensibilities.'" It was not established that Appellant was even using drugs at the time of the murder or shortly before. The record contains no evidence Appellant was overwhelmed by drugs to the point of losing his faculties. On the contrary, his actions and writings after the murder indicate highly lucid thought. And Appellant's actions, leading up to the murder, are highly suggestive of a longstanding plot to kill [Wife].

Finally, Appellant at trial made an issue of the fact that the police did not test him for drugs when he was arrested. [N.T., 2/5/19, at 114]. However . . . Appellant waited twelve to sixteen hours before reporting he had killed [Wife]. When he finally did turn himself in, he showed no signs of impairment[.]

*Id.* at 9.

At trial, Appellant sought to convince the jury that the shooting was accidental and therefore he should be found not guilty to the murder charge. Appellant testified, in stark detail, concerning the circumstances of Wife's death; he recalled retrieving Wife's "birthday present" (the gun), his conversation with Wife, her position on the bed, her reaction to the "gift," and the details of how the firearm "accidently" discharged into the back of Wife's head. N.T., 2/6/19 afternoon, at 31-34. This testimony and theory of the case are incompatible with a voluntary intoxication defense, which

negates the intentional component of a first degree murder conviction. Appellant's mere evidence of intoxication does not make out a diminished capacity defense. **See Clemons**, 200 A.3d at 465; **Spotz**, 96 A.2d at 1218. Crucially missing from Appellant's trial testimony and his argument on appeal is evidence of impairment to such a degree that he lost all "faculty and sensibility" and was completely overwhelmed or overpowered by the alleged intoxicants. To the contrary, Appellant's recalled detail belies any assertion of lost faculty warranting a voluntary intoxication instruction to first degree murder. Appellant cannot claim both that he accidently fired the gun while attempting to unload it and that he was so intoxicated he lost control of his faculties at the time of the shooting. Thus, where Appellant's testimony was presented to a jury as the finder of fact, we can hardly take issue with the jury's rejection of his claimed "accidental shooting" defense as a credibility determination, which this Court will not disturb. **See Clemons**, 200 A.3d at 463.

We find no basis to conclude the trial court abused its discretion by denying Appellant's request for a voluntary intoxication or diminished capacity jury instruction. **See Clemons**, 200 A.3d at 467. The trial court provided detailed facts supporting its ruling in its well-reasoned opinion. The record also reflects that police did not drug test Appellant because during questioning, he showed no signs of intoxication. **See** N.T., 2/5/19, at 119.

Judgment of sentence affirmed.

Judge Pellegrini joins the memorandum.

Judge McLaughlin files a concurring memorandum statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/10/2020