J-S39039-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUAN JR. CRISTO-MUNOZ | : | |
| | : | |
| Appellant | : | No. 937 MDA 2022 |

Appeal from the PCRA Order Entered June 30, 2022
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0001591-2017

BEFORE: PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:  **FILED: FEBRUARY 2, 2023**

Appellant Juan Jr. Cristo-Munoz appeals from the order denying his timely first Post Conviction Relief Act[1] (PCRA) petition. Appellant contends that plea counsel was ineffective for failing to advise Appellant about the possibility of proceeding to trial and arguing diminished capacity from voluntary intoxication. After review, we affirm based on the PCRA court's opinion.

The PCRA court summarized the relevant facts and procedural history of this matter as follows:

> On February 19, 2017, [Appellant], then 18 years old, was charged with two counts of criminal homicide, two counts of robbery, burglary and criminal conspiracy[FN1] from an incident involving the brutal torture-killings of two disabled brothers, Richard Walton and Leroy Kinsey, on February 19, 2017. [Appellant] and his co-conspirator, 19-year-old Joshua Michael

---

[1] 42 Pa.C.S. §§ 9541-9546.

Proper,[FN2] forced their way into the brothers' home in Lancaster City, demanded money from the victims and then repeatedly stabbed them. Kinsey was stabbed at least ten times. Walton was stabbed 54 times with a sword taken from the home. The co-defendants then fled to the basement of the home, where officers ultimately found them after responding to a 911 call for a burglary in progress placed by a third occupant of the home who had fled to the roof.

[FN1] 18 Pa.C.S. § 2501(a), 18 Pa.C.S. § 3701(a)(1)(i), 18 Pa.C.S. § 3502(a)(1)(i), and 18 Pa.C.S. § 903(a), respectively.

[FN2] On April 11, 2017, the Commonwealth consolidated this case with the homicide charges filed against Proper at Information No. 1592-2017.

Pursuant to Pa.R.Crim.P, 802, the Commonwealth filed a notice of intent to seek a sentence of death against [Appellant] on March 22, 2017.[FN3] However, on April 11, 2018, [Appellant] agreed to enter a guilty plea to the charges of first-degree murder, burglary, robbery, and conspiracy to commit burglary in exchange for the Commonwealth dropping the death penalty.

[FN3] Specifically, the Commonwealth believed it could prove the following statutory aggravating circumstances: (1) defendant committed a killing while in the perpetration of a felony, specifically, burglary and robbery; (2) in the commission of the offense, the defendant knowingly created a grave risk of death to another person in addition to the victims of the offense (Ryan Taska); (3) the killing was committed by means of torture (victim Leroy Kinsey); and (4) the defendant has committed multiple murders. *See* 42 Pa.C.S. § 9711(d)(6), (7), (8) and (11).

Pursuant to the negotiated guilty plea tendered on April 11, 2018, the court imposed consecutive mandatory sentences of life without the possibility of parole on the first-degree murder convictions.[FN4] No post-sentence motions were filed.

[FN4] Pennsylvania law mandates that if a person is found guilty of first-degree murder and does not receive the death penalty he or she will receive a sentence of life imprisonment without the possibility of parole. *See* 18 Pa.C.S. § 1102(a)(1).

On May 10, 2018, [Appellant] filed a timely direct appeal to the Superior Court of Pennsylvania from the judgment of sentence imposed on April 11, 2018. A three-judge panel of the Superior Court affirmed the judgment of sentence in an unpublished memorandum filed on April 16, 2019, *See Commonwealth v. Cristo-Munoz*, [780 MDA 2018] 2019 WL 1749210 (Pa. Super. [filed Apr. 16,] 2019) [(unpublished mem.)].

On March 18, 2020, [Appellant], acting *pro se*, filed a timely motion for post conviction collateral relief. In this pleading, [Appellant] challenged the effective assistance of his trial counsel, Edwin G. Pfursich. Pursuant to Rule 904(A) of the Pennsylvania Rules of Criminal Procedure, on September 21, 2020, Christopher P. Lyden, Esquire, was appointed to represent [Appellant] on his collateral claims and was granted leave to file an amended [PCRA] petition.

On December 1, 2020, Attorney Lyden mailed Petitioner a "no merit" letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988), stating that after his review of the *pro se* PCRA petition and the record of the case, he found no meritorious issues. In his *pro se* objections to the "no merit" letter, [Appellant] alleged for the first time that trial counsel was ineffective for failing to advise him regarding the possibility, based on his mental health history and use of alcohol, prescription and illegal narcotics, of mounting a "diminished capacity" defense to the first-degree murder charge. Upon review of all the pleadings, the court issued an order on April 1, 2021, directing Attorney Lyden to review and respond to the new issue raised by [Appellant].

Thereafter, Attorney Lyden filed an amended petition on April 21, 2021, which raises the sole issue of whether defense counsel were ineffective for failing to advise [Appellant] that a diminished capacity defense because of voluntary intoxication could be presented during a trial. The Commonwealth filed a response to the amended petition on May 21, 2021, conceding the need for an evidentiary hearing on this claim. Accordingly, a hearing was held on November 29, 2021, at which time the court heard testimony from defense attorneys Edwin G. Pfursich and Joseph P. McMahon [(collectively Defense Counsel)], and [Appellant]. Proposed findings of fact and conclusions of law were filed by [Appellant] on December 23, 2021, to which the Commonwealth filed an answer on January 16, 2022.

PCRA Ct. Op., 7/5/22, at 1-4 (some footnotes omitted and formatting altered).

The PCRA court denied Appellant's petition on June 30, 2022, and Appellant filed a timely appeal. Both the PCRA court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issue:

1. Did the PCRA court err by failing to find that [Appellant] entered an invalid plea where [Defense Counsel] failed to discuss with [Appellant] the possibility of defending the charges at trial by claiming diminished capacity from voluntary intoxication?

Appellant's Brief at 4 (formatting altered).

Appellant argues that Defense Counsel knew that he had consumed alcohol on the night of the offenses but failed to thoroughly discuss the possibility of proceeding to trial and defending the homicide charges by claiming voluntary intoxication. *Id.* at 11. Appellant contends that he would not have plead guilty if he was aware of the possibility of presenting this defense, and therefore, he entered an involuntary and unknowing guilty plea. *Id.* at 11-12.

In reviewing Appellant's claims, we are guided by the following principles:

[O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

- 4 -

Furthermore, to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citations omitted and formatting altered). "Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." *Commonwealth v. Kelley*, 136 A.3d 1007, 1013 (Pa. Super. 2016) (citation omitted). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.* (citation omitted).

The standard for post-sentence withdrawal of guilty pleas dovetails with the arguable merit/prejudice requirements for relief based on a claim of ineffective assistance of plea counsel, ... under which the defendant must show that counsel's deficient stewardship resulted in a **manifest injustice**, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea. This standard is equivalent to the "**manifest injustice**" standard applicable to all post-sentence motions to withdraw a guilty plea.

*Id.* (citation omitted and emphasis added).

Our law is clear that, to be valid, a guilty plea must be knowingly, voluntarily and intelligently entered. There is no absolute right to

- 5 -

withdraw a guilty plea, and the decision as to whether to allow a defendant to do so is a matter within the sound discretion of the trial court. To withdraw a plea after sentencing, a defendant must make a showing of prejudice amounting to "manifest injustice." "A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently." A defendant's disappointment in the sentence imposed does not constitute "manifest injustice."

*Commonwealth v. Pollard*, 832 A.2d 517, 522 (Pa. Super.2003).

Thus, to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. The reasonable probability test is not a stringent one; it merely refers to a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Barndt*, 74 A.3d 185, 192 (Pa. Super. 2013) (citations omitted and formatting altered). "A defendant is permitted to withdraw his guilty plea under the PCRA if ineffective assistance of counsel caused the defendant to enter an involuntary plea of guilty." *Commonwealth v. Rathfon*, 899 A.2d 365, 369 (Pa. Super. 2006) (citation omitted).

Moreover, "[o]ur law presumes that a defendant who enters a guilty plea was aware of what he was doing[, and the defendant] bears the burden of proving otherwise." *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa. Super. 2003) (citations omitted).

The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. A person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.

- 6 -

*Id.* (internal citation omitted). Further:

> In order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences. This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea. Thus, even though there is an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

*Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011) (citation omitted and formatting altered).

Additionally, a claim of diminished capacity due to voluntary intoxication cannot be asserted by mere evidence of intoxication, but rather the assertion requires evidence that demonstrates the defendant was intoxicated to such an extent that he was unable to form the requisite intent. *Commonwealth v. Spotz*, 896 A.2d 1191, 1218 (Pa. 2006). Moreover, "[a] defense of diminished capacity is only available to a defendant who admits criminal liability but contests the degree of guilt." *Commonwealth v. Laird*, 726 A.2d 346, 353 (Pa. 1999).

Instantly, the PCRA court determined that Appellant's testimony that he was intoxicated to the extent that he was unable to form specific intent to kill was not credible, and continued that initially, Appellant asserted his innocence and blamed co-defendant Joshua Proper for committing the murders alone. Further, trial counsel, Attorney McMahon testified at the PCRA hearing that he discussed the defense of voluntary intoxication with Appellant prior to him

agreeing to the negotiated plea. **See** PCRA Ct. Op., 7/5/22, at 2, 8, 10, 11. The trial court imposed consecutive mandatory sentences of life without the possibility of parole on the two first-degree murder convictions, and the Commonwealth dropped the death penalty sentence it was seeking.

On this record, we agree with the PCRA court that Appellant's claims that he would have gone to trial and not plead guilty if he had known about the defense of diminished capacity due to voluntary intoxication are not credible, and Appellant cannot establish prejudice as he did not enter an involuntary or unknowing plea resulting in a manifest injustice. **See Kelley**, 136 A.3d at 1013; **see also Rathfon**, 899 A.2d at 369.

Following our review of the record, the parties' briefs, and the well-reasoned conclusions of the PCRA court, we affirm based on the PCRA court's opinion. **See** PCRA Ct. Op., 7/5/22, at 1-13.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/02/2023

July 29, 2022

Re: Juan Cristo-Munoz Jr.
Cp Cr No: 1591-2017
Superior Cr No: 937 MDA 2022

Index of Opinion

1. Index of Opinion
2. Opinion in Support of Order of June 30, 2022
3. Order Denying Amended/Petition for Post – Conviction Collateral Relief Act

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA**
**C R I M I N A L**

COMMONWEALTH OF PENNSYLVANIA :
                       :
         v.            :       No. 1591 - 2017
                       :
JUAN CRISTO-MUNOZ, JR.     :

**OPINION IN SUPPORT OF ORDER OF JUNE 30, 2022**

BY:   ASHWORTH, P.J., JULY 5, 2022

Juan Cristo-Munoz, Jr., filed an amended petition pursuant to the Post Conviction

Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-46. That amended petition was denied by

order entered on June 30, 2022, following an evidentiary hearing. This opinion is filed in

support of that decision.

## I.   Background

The relevant facts and procedural history may be summarized as follows. On

February 19, 2017, Cristo-Munoz, then 18 years old, was charged with two counts of

criminal homicide, two counts of robbery, burglary and criminal conspiracy[1] from an

incident involving the brutal torture-killings of two disabled brothers, Richard Walton and

Leroy Kinsey, on February 19, 2017. Cristo-Munoz and his co-conspirator, 19-year-old

---

[1] 18 Pa.C.S.A. § 2501(A), 18 Pa.C.S.A. § 3701(a)(1)(i), 18 Pa.C.S.A. § 3502(a)(1)(i), and 18 Pa.C.S.A. § 903(A), respectively.

Joshua Michael Proper,[2] forced their way into the brothers' home in Lancaster City, demanded money from the victims and then repeatedly stabbed them. Kinsey was stabbed at least ten times. Walton was stabbed 54 times with a sword taken from the home. Notes of Testimony (N.T.), Guilty Plea/Sentencing at 25-26. The co-defendants then fled to the basement of the home, where officers ultimately found them after responding to a 911 call for a burglary in progress placed by a third occupant of the home who had fled to the roof. Id. at 24.

Pursuant to Pa.R.Crim.P. 802, the Commonwealth filed a Notice of Intent to Seek a Sentence of Death against Cristo-Munoz on March 22, 2017.[3] However, on April 11, 2018, Cristo-Munoz agreed to enter a guilty plea to the charges of first-degree murder, burglary, robbery, and conspiracy to commit burglary in exchange for the Commonwealth dropping the death penalty. N.T., Guilty Plea/Sentencing at 30.

Pursuant to the negotiated guilty plea tendered on April 11, 2018, the court imposed consecutive mandatory sentences of life without the possibility of parole on the first-degree murder convictions.[4] N.T., Guilty Plea/Sentencing at 32. No post sentence motions were filed.

---

[2] On April 11, 2017, the Commonwealth consolidated this case with the homicide charges filed against Proper at Information No. 1592-2017.

[3] Specifically, the Commonwealth believed it could prove the following statutory aggravating circumstances: (1) defendant committed a killing while in the perpetration of a felony, specifically, burglary and robbery; (2) in the commission of the offense, the defendant knowingly created a grave risk of death to another person in addition to the victims of the offense (Ryan Taska); (3) the killing was committed by means of torture (victim Leroy Kinsey); and (4) the defendant has committed multiple murders. See 42 Pa.C.S.A. §§ 9711(d)(6), (7), (8) and (11)

[4] Pennsylvania law mandates that if a person is found guilty of first-degree murder and does not receive the death penalty he or she will receive a sentence of life imprisonment without the possibility of parole. See 18 Pa.C.S.A. § 1102(a)(1).

2

On May 10, 2018, Cristo-Munoz filed a timely direct appeal to the Superior Court of Pennsylvania from the judgment of sentence imposed on April 11, 2018.[5] A three-judge panel of the Superior Court affirmed the judgment of sentence in an unpublished memorandum filed on April 16, 2019. *See* **Commonwealth v. Cristo-Munoz**, 216 A.3d 394, 2019 WL 1749210 (Pa. Super. 2019).

On March 18, 2020,[6] Cristo-Munoz, acting *pro se*, filed a timely[7] motion for post conviction collateral relief. In this pleading, Cristo-Munoz challenged the effective assistance of his trial counsel, Edwin G. Pfursich. Pursuant to Rule 904(A) of the Pennsylvania Rules of Criminal Procedure, on September 21, 2020, Christopher P. Lyden, Esquire, was appointed to represent Cristo-Munoz on his collateral claims and was granted leave to file an amended petition.

---

[5] Pursuant to this court's directive, Cristo-Munoz's counsel furnished a concise statement of errors complained of on appeal on June 8, 2018, which sets forth four bases for this appeal: (1) Defendant was not provided the opportunity to speak at his sentencing hearing or testify against his co-defendant, Joshua Proper; (2) the facts of the case, as outlined by the Commonwealth, were inaccurate and based upon a "corrupt source," Mr. Proper; (3) the Assistant District Attorney insulted Defendant and called him a "monster"; and (4) Defendant was subjected to torture and malnourishment during his stay at Lancaster County Prison. *See* Statement of Errors at ¶¶ 1-4. Counsel for Cristo-Munoz noted in the Statement of Errors that it was his conclusion that Cristo-Munoz's issues were "without merit," and that counsel intended to file a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967). Id. at 2.

[6] The pleading is deemed filed on the date of mailing rather than the date of docketing pursuant to the "prisoner mailbox rule." **Error! Main Document Only.***See* **Commonwealth v. Crawford**, 17 A.3d 1279, 1281 (Pa. Super. 2011) ("Under the prisoner mailbox rule, we deem a *pro se* document filed on the date it is placed in the hands of prison authorities for mailing.").

[7] Pursuant to 42 Pa.C.S.A. § 9545(b), a petition for relief must be filed within one year of the date the judgment of sentence becomes final. Here, Cristo-Munoz's judgment of sentence was affirmed on April 16, 2019. As Cristo-Munoz did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania, his judgment of sentence became final on May 16, 2019, when the period for filing a petition expired. Cristo-Munoz filed his *pro se* PCRA petition on March 18, 2020; as a result, it is timely.

3

On December 1, 2020, Attorney Lyden mailed Petitioner a "no merit" letter pursuant to **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988), and **Commonwealth v. Finley**, 379 Pa. Super. 390, 550 A.2d 213 (1988), stating that after his review of the *pro se* PCRA petition and the record of the case, he found no meritorious issues. In his *pro se* objections to the "no merit" letter, Cristo-Munoz alleged for the first time that trial counsel was ineffective for failing to advise him regarding the possibility, based on his mental health history and use of alcohol, prescription and illegal narcotics, of mounting a "diminished capacity" defense to the first-degree murder charge. Upon review of all the pleadings, the court issued an order on April 1, 2021, directing Attorney Lyden to review and respond to the new issue raised by Petitioner.

Thereafter, Attorney Lyden filed an amended petition on April 21, 2021, which raises the sole issue of whether defense counsel were ineffective for failing to advise Cristo-Munoz that a diminished capacity defense because of voluntary intoxication could be presented during a trial. *See* Amended PCRA Petition at ¶¶ 21-24. The Commonwealth filed a response to the amended petition on May 21, 2021, conceding the need for an evidentiary hearing on this claim. Accordingly, a hearing was held on November 29, 2021, at which time the court heard testimony from Defense Attorneys Edwin G. Pfursich and Joseph P. McMahon, and Petitioner Cristo-Munoz. Proposed findings of fact and conclusions of law were filed by Petitioner on December 23, 2021, to which the Commonwealth filed an answer on January 16, 2022.

By order filed June 30, 2022, the amended PCRA petition of Cristo-Munoz was denied. This opinion is offered in support of that order.

4

## II.    Discussion

Cristo-Munoz claims that his defense attorneys provided ineffective assistance of counsel for not explaining the defense of diminished capacity, voluntary intoxication, and that if they had explained that defense that he would not have pleaded guilty to a term of life imprisonment for the double homicide. For the reasons that follow, Cristo-Munoz's claim of ineffective assistance of counsel was rejected.

To prevail on a claim of ineffective assistance of counsel made in the post conviction context, a defendant must overcome the presumption that counsel is effective by establishing by a preponderance of the evidence that: the underlying claim has arguable merit; trial counsel had no reasonable basis for proceeding as he did; and the defendant suffered prejudice. **Commonwealth v. Spotz**, 616 Pa. 164, 187, 47 A.3d 63, 76 (2012) (*citing* **Commonwealth v. Pierce**, 515 Pa. 153, 158-59, 527 A.2d 973, 975-76 (1987)).

With respect to whether defense counsel's acts or omissions were reasonable, counsel is accorded broad discretion to determine tactics and strategy. **Commonwealth v. Fowler**, 447 Pa. Super. 534, 540, 670 A.2d 153, 155-56 (1996). The applicable test is not whether alternative strategies were more reasonable, employing a "hindsight" evaluation of the record, but whether counsel's decision had *any* reasonable basis to advance the interests of the defendant. **Commonwealth v. Chmiel**, 612 Pa. 333, 361, 30 A.3d 1111, 1127 (2011). The appellate courts will conclude that counsel's chosen strategy lacked a reasonable basis only if the petitioner proves that "an alternative not chosen offered a potential for success substantially greater than the course actually

5

pursued." Id. at 361-62, 30 A.3d at 1127 (*quoting* **Commonwealth v. Williams**, 587 Pa. 304, 312, 899 A.2d 1060, 1064 (2006)).

To establish the prejudice prong, the defendant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. **Chmiel**, *supra* at 362-63, 30 A.3d at 1127-28. "We stress that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a defendant's burden to prove that counsel was ineffective." Id. (*quoting* **Commonwealth v. Paddy**, 609 Pa. 272, 292, 15 A.3d 431, 443 (2011)).

Failure to establish any prong of the **Pierce** test will defeat an ineffectiveness claim. **Commonwealth v. Simpson**, 620 Pa. 60, 73, 66 A.3d 253, 260 (2013). Thus, where a petitioner has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone without a determination of whether the arguable merit and client's interest prongs have been met. **Commonwealth v. Wright**, 599 Pa. 270, 320-21, 961 A.2d 119, 148-49 (2008); **Commonwealth v. Zook**, 585 Pa. 11, 26, 887 A.2d 1218, 1227 (2005).

In this case, Cristo-Munoz pleaded guilty to two counts of first-degree murder. As a threshold matter, "[g]enerally, a plea of guilty amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and the validity of the guilty plea." **Commonwealth v. Morrison**, 173 A.3d 286, 290 (Pa. Super. 2017) (citation omitted). Cristo-Munoz has not challenged the

6

jurisdiction of this court or the legality of his sentence. Cristo-Munoz does dispute, however, the validity of his guilty plea.

"Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." **Commonwealth v. Hickman**, 799 A.2d 136, 141 (Pa. Super. 2002) (citation omitted). *See also* 42 Pa.C.S.A. § 9543(a)(2)(iii). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Id. (citations and internal quotation marks omitted).

In assessing the voluntariness of a guilty plea, our Superior Court has noted that "[t]he law does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty; rather [a]ll that is required is that [the defendant's] decision to plead guilty be knowingly, voluntarily and intelligently made." **Commonwealth v. Brown**, 48 A.3d 1275, 1277 (Pa. Super. 2012) (citations and internal quotation marks omitted).

> With regard to the voluntariness of a plea, a guilty plea colloquy must affirmatively demonstrate the defendant understood what the plea connoted and its consequences. Once the defendant has entered a guilty plea, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him.

**Commonwealth v. Willis**, 68 A.3d 997, 1002 (Pa. Super. 2013) (citations and internal quotation marks omitted).

Here, Cristo-Munoz contends that Attorneys Pfursich and McMahon were ineffective for failing to "thoroughly discuss with petitioner the possibility of defending

7

the criminal homicide charges by claiming voluntary intoxication." Suggested Findings of

Fact and Conclusions of Law at ¶ 27. As made clear by our Supreme Court:

> [A] defense of diminished capacity grounded in voluntary intoxication is a very limited defense, which does not exculpate the defendant from criminal liability, but, if successfully advanced, mitigates first-degree murder to third-degree murder. The mere fact of intoxication is not a defense; rather, the defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised by voluntary intoxication that he was unable to formulate the specific intent to kill. In other words, to prove a voluntary intoxication defense, the defendant must show that he was overwhelmed to the point of losing his faculties and sensibilities. Evidence that the defendant lacked the ability to control his actions or acted impulsively is irrelevant to specific intent to kill, and thus does not constitute support of a voluntary intoxication defense.

**Commonwealth v. Bardo**, 629 Pa. 352, 415-16, 105 A.3d 678, 716 (2014) (internal

citations and quotations omitted). Such a defense of diminished capacity "is only

available to a defendant who admits criminal liability but contests the degree of guilt."

**Commonwealth v. Spotz**, 587 Pa. 1, 46, 896 A.2d 1191, 1218 (2006) (*quoting*

**Commonwealth v. Laird**, 555 Pa. 629, 726 A.2d 346, 353 (1999)).

Initially, it must be noted that Cristo-Munoz first insisted that he was innocent of

the charges and that his co-defendant, Joshua Proper, committed the murders alone.

N.T., PCRA Hearing at 63, 85, 95. Such a position would preclude a voluntary

intoxication defense which requires an admission of criminal liability. However, when

Petitioner understood the felony murder rule, he knew he was facing a sentence of life

without parole regardless of who actually committed the murders. Id. at 63, 80. He then

admitted to counsel to participating in the killings. Id. at 57.

Further, it is uncontested that Petitioner did not tell his defense counsel that he

was intoxicated to the extent that he was unable to form the specific intent to kill. N.T.,

8

PCRA Hearing at 69. Having failed to provide counsel with this information, Cristo-Munoz cannot now establish his attorneys were ineffective for failing to pursue a defense that was not suggested by the evidence provided to them. Accordingly, there is no arguable merit to Petitioner's claim that counsel should have pursued a voluntary intoxication defense to the first-degree murder charges.

The evidence available to defense counsel did not suggest that a defense based on voluntary intoxication was viable. Cristo-Munoz was evaluated by a licensed psychologist, Jonathan M. Gransee, Ph.D., nine months after the murders. *See* Commonwealth Exhibit No. 2. During that interview, Petitioner related very particular details about the murders. Id.; N.T., PCRA Hearing at 36. Specifically, Cristo-Munoz told Dr. Gransee that had he planned ahead for these murders he would have burned down the home to destroy the evidence, he would have been more careful about touching items on the first floor that had fallen down, and he would not have let his blood from a cut on his hand get on the mop handle he was using to clean up the blood on the second floor. Id. at 35-36. Petitioner evidenced a very specific recall of the events on the night of the murders, despite his consumption of beer and prescription drugs. Id. at 16-17, 20, 37.

Attorney Pfursich and Attorney McMahon testified at the evidentiary hearing that they did initially consider the diminished capacity defense of voluntary intoxication in this case.[8] N.T., PCRA Hearing at 61, 77-78. However, for voluntary intoxication to be

---

[8] Attorney Pfursich testified at the hearing that he actually considered two diminished capacity defenses in this case. N.T., PCRA Hearing at 60. The first defense counsel considered was diminished capacity due to mental disorders that might have affected Petitioner's cognitive

9

applicable, the person must have been so intoxicated that he lacked all control of his faculties. Id. at 61-62. Counsel dismissed this defense after Cristo-Munoz gave his very detailed chain of events to Dr. Gransee. Significantly, Petitioner's version of events was different than anything that was included in the discovery. Id. at 71. Attorney Pfursich, therefore, did not believe this was a case of Petitioner reading the discovery and relating details not from specific recall but from the reports, as suggested by PCRA counsel. Id. See also Id. at 29-30, 35-37; Suggested Findings of Fact and Conclusions of Law at ¶ 31. As neither the facts of the case presented by Petitioner nor the discovery supported a defense of voluntary intoxication, counsel appropriately did not pursue it. Id. at 69.

Moreover, Petitioner's testimony at the evidentiary hearing that he was intoxicated to the extent that he was unable to form the specific intent to kill is not credible. He testified that at approximately 11:00 p.m. on the night of the murders he consumed a 40-ounce beer, which was a typical amount that he would consume in order to "get [him] feeling good." N.T., PCRA Hearing at 20, 39. Sixty to ninety minutes after consuming the beer, Cristo-Munoz and his co-defendant entered the victims' house. Id. at 24. Cristo-Munoz testified, in direct contravention to his statements made at the time of the guilty plea, that he has no recollection of being in the residence or of what happened there due to his intoxication that night. Id. at 24-25. He stated,

---

ability to form the specific intent to kill. Id. Dr. Gransee did diagnose Cristo-Munoz with several mental health disorders; however, he opined that none of them would have affected his cognitive ability to understand what he was doing. Id. at 60-61. Therefore, counsel did not pursue this defense.

"everything went to a blur." Id. at 24. Petitioner now claims that he lied to the court, his defense counsel, and Dr. Gransee when he admitted his complicity in the murders and argues that he was so intoxicated that night that he has no memory of the incident. Id. at 40, 49. Such assertions are simply not credible and are belied by the evidence.

Counsel had a reasonable basis for advising Petitioner that it was in his best interest to enter a negotiated plea to a term of life imprisonment. Both counsel testified at the hearing that, even if Cristo-Munoz's version of events that his co-defendant was solely responsible for the murders was to be believed by a jury, the murders were committed during the course of a burglary and robbery, which qualifies for second-degree murder which carries a mandatory life-without-parole sentence. N.T., PCRA Hearing at 47, 62-63, 77. Thus, Petitioner was still facing a sentence of life in prison for felony murder. Id. at 95.

Cristo-Munoz testified at the PCRA Hearing that if the voluntary intoxication defense had been presented to him, he would not have entered a plea of guilty to first-degree murder but rather would have gone to trial. N.T., PCRA Hearing at 33-34. Attorney McMahon testified unequivocally that he discussed voluntary intoxication with Cristo-Munoz prior to him agreeing to the negotiated plea. Id. at 87-88. Regardless, had Petitioner gone to trial, he was facing the death penalty if found guilty of first-degree murder, and counsel testified to the fact that there were significant, multiple aggravating factors and "very little" in the way of mitigation evidence. Id. at 82. Counsel weighed the odds at trial where Petitioner could get a death sentence versus the benefits of a plea to

11

life in prison. Id. Counsel had a reasonable basis in advising Cristo-Munoz to enter the plea and acted in his best interests.

Finally, Petitioner did not suffer prejudice from counsel's actions. Cristo-Munoz must prove that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness; that is, that if he was informed of the defense of voluntary intoxication that he would not have pleaded guilty and would have gone to trial. Petitioner understood that if he went to trial and the jury believed his version of the events he would still be found guilty of second-degree murder because the murders happened as a result of a burglary. N.T., PCRA Hearing at 47. He further understood that such a conviction would result in a sentence of life in prison without parole. Id. Therefore, even had Petitioner pursued a voluntary intoxication defense to the first-degree murder charges, he would not have avoided a life imprisonment sentence and would have faced the possible of a death sentence – a sentence he did not want. Id. at 47-48; 41. Accordingly, Petitioner's testimony that he would have gone to trial and not pleaded guilty if he had known about the defense of diminished capacity, voluntary intoxication is not credible.

### III.    Conclusion

For the reasons set forth above, Juan Cristo-Munoz's amended PCRA petition was denied.

Accordingly, I enter the following:

12

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA**
**C R I M I N A L**

COMMONWEALTH OF PENNSYLVANIA :
:
v. : No. 1591 - 2017
:
JUAN CRISTO-MUNOZ, JR. :

### O R D E R

AND NOW, this 5th day of July, 2022, the Court hereby submits this Opinion in support of the Order of June 30, 2022, denying Juan Cristo-Munoz's amended petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-46.

BY THE COURT:

DAVID L. ASHWORTH
PRESIDENT JUDGE

Copies to:   Cody L. Wade, Assistant District Attorney
Christopher P. Lyden, Esquire
Juan Cristo-Munoz, Jr., #NJ-1102, SCI Somerset, 1590 Walters Mill Road,
Somerset, PA 15510-0001

13

# IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
## C R I M I N A L

COMMONWEALTH OF PENNSYLVANIA :
                              :
        v.                    :          No. 1591 - 2017
                              :
JUAN CRISTO-MUNOZ, JR.        :

## ORDER

AND NOW, this 30th day of June, 2022, upon consideration of Petitioner Juan Cristo-Munoz's amended petition for post conviction collateral relief, and following an evidentiary hearing in this matter, it is hereby ORDERED that said petition is DENIED.

Pursuant to Pa.R.Crim.P. 907(4), this Court advises Petitioner that he has the right to appeal from this Order. Petitioner shall have **30 days** from the date of this final Order to appeal to the Superior Court of Pennsylvania. Failure to appeal within 30 days will result in the loss of appellate rights.

It is further ORDERED that Petitioner shall have the right, if indigent, to appeal *in forma pauperis* and to proceed with assigned appellate counsel as provided in Pa. R.Crim.P. 122.

BY THE COURT:

DAVID L. ASHWORTH
PRESIDENT JUDGE

CLERK OF COURTS
2022 JUN 30 PH 2:09
LANCASTER COUNTY, PA

Copies to: Cory L. Wade, Esquire, Assistant District Attorney
Christopher P. Lyden, Esquire, MILLER LYDEN, 53 North Duke Street, Suite 205, Lancaster, PA 17602
Juan Cristo-Munoz, Jr., #NJ1102, SCI Somerset, 1590 Walters Mill Road, Somerset, PA 15510-0001 (Certified Mail)